House of Representatives
State House
Montgomery, Alabama
Dear Representatives:
We have received House Resolution No. 70, requesting an advisory opinion on the constitutionality of House Bill No. 42. Resolution No. 70 reads:
*445 “BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, That we respectfully request the Honorable Chief Justice and Associate Justices of the Supreme Court or a majority of them, to give this body their written opinions on the following important constitutional questions that have arisen concerning the pending bill, H.B. 42, a copy of which- is attached to this resolution and made a part hereof by reference.
“House Bill 42 authorizes the sheriff to contract housing of federal, municipal, and county prisoners other than Escambia County prisoners.
“1. Does H.B. 42 violate Section 94 of the Constitution of Alabama of 1901, which prohibits the Legislature authorizing any county to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association, or corporation?
“2. Under Section 14^6-3, Code of Alabama 1975, a jail is required to be used for the confinement of all persons committed to it by authority of law. Section 14-6-4, Code of Alabama 1975, requires a sheriff to receive into custody any person committed under any criminal charge or offense against the United States. Do these sections subsume the law regarding the housing of prisoners in a county jail and is a local law permitting the sheriff to contract housing for prisoners in conflict with the general law in violation of Section 105 of the Constitution of Alabama of 1901?
“3. H.B. 42 permits the sheriff to expend funds received for housing federal prisoners for law enforcement purposes. Does H.B. 42 violate Section 280' of the Constitution of 1901, which prohibits a person holding an office of profit under the United States from holding any office of profit under the state?
“RESOLVED FURTHER, That the Clerk of the House of Representatives is directed to send sufficient true copies of the pending bill, H.B. 42, to the Clerk of the Supreme Court of Alabama, and to transmit this request to the Justices of the Supreme Court upon adoption of this resolution.”
The copy of H.B. 42 accompanying this resolution reads:
“A BILL
“TO BE ENTITLED
“AN ACT
“Relating to Escambia County, authorizing the sheriff to operate a jail store, contract telephone installation for inmates, and contract housing for federal, municipal, and county prisoners other than Es-cambia County prisoners; providing for the deposit of moneys earned and for the distribution and auditing of monies earned; and providing for a retroactive effective date.
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. This act shall be operative only in Escambia County.
“Section 2. The Sheriff of Escambia County is authorized to operate a jail store and contract telephone installation for inmates within the confines of the county jail. The jail store and inmate telephones shall be .operated to serve the needs of the county jail population. The sheriff is further authorized to contract housing of federal, municipal, and county prisoners other than Escambia County prisoners.
“Section 3. Any and all monies collected under Section 2 of this act shall be deposited by the Sheriff of Escambia County or his or her appointed agent in any bank located in Escambia County selected by the sheriff into a fund known as the Sheriffs Law Enforcement Fund.
“Section 4. The Sheriffs Law Enforcement Fund as provided in Section 3 of this act shall be drawn upon by the Sheriff of Escambia County or his or her appointed agent and shall be used exclusively for law enforcement purposes in the public’s interest in the discharge of the sheriffs office as the sheriff sees fit.
“Section 5. Any and all monies collected as outlined in Section 2 of this act prior to the effective date of this act shall be *446 transferred into the Sheriffs Law Enforcement Fund created by this act.
“Section 6. The establishment of the Sheriffs Law Enforcement Fund as provided in this act and the use of the funds shall in no way diminish or take the place of other sources of income established for the sheriff or the operation of his or her office.
“Section 7. The State Examiners of Public Accounts is authorized to audit the moneys annually and submit a copy of the audit to the sheriff within 30 days of its completion.
“Section 8. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, that declaration shall not affect the part which remains.
“Section 9. All laws or parts of laws which conflict with this act are repealed.
“Section 10. The provisions of this act shall be retroactive to September 1, 1992, and all actions taken by the Sheriff of Escambia County in accordance with the provisions of this act are hereby validated and confirmed.”
In our view, Question 2 of House Resolution No. 70 presents the dispositive issue. Therefore, we shall first consider whether the provisions in § 2 of the proposed local act authorizing the sheriff “to contract housing of federal, municipal, and county prisoners other than Escambia County prisoners,” violate Ala. Const. 1901, § 105.
The relevant portion of § 105 provides that “[n]o special, private, or local law ... shall be enacted in any case which is provided for by a general law.” (Emphasis added.) This section prohibits “the enactment of a local act when the subject is already subsumed by [a] general statute.” Peddycoart v. City of Birmingham, 354 So.2d 808, 813 (Ala.1978). The subject of a local law is deemed to be “subsumed” in a general law if the effect of the local law is to create a variance from the provisions of the general law. Crandall v. City of Birmingham, 442 So.2d 77, 80 (Ala.1983). The answer to question 2 thus turns on whether the provisions of H.B. 42 relating to non-Escam-bia County prisoners create a variance from the provisions of general statutes.
Ala.Code 1975, §§ 14-6-3 through -6, are general statutes regulating the “housing of prisoners in a county jail.” See Resolution 70, question 2. Those sections provide:
§ 14-6-3 “In addition to convicts sentenced to imprisonment in the county jail, the jail is used as a prison for the safekeeping or confinement of the following persons:
“(1) Persons committed for trial for public offenses;
“(2) Convicts sentenced to imprisonment in the penitentiary, until their removal thereto;
“(3) Persons committed for contempt or on civil process;
“(4) Persons committed on failure to give security for their appearance as witnesses in any criminal case;
“(5) Persons charged with, or convicted of a criminal offense against the United States;
“(6) Insane persons, pending transfer to a mental hospital or other disposition; and
“(7) All other persons committed thereto by authority of law.”
§ 14-6-4 “The sheriff or jailer must, if the jail of the county is sufficient, receive into his custody any person committed under any criminal charge or offense against the United States and safely keep such prisoner, according to the order or process of commitment, until duly discharged by law; and he is liable to the same penalties for the escape of such prisoner as for the escape of a prisoner committed under the authority of this state.
§ 14-6-5 “Any jailer or other officer who willfully refuses to receive into his custody any person lawfully committed thereto on any criminal charge or conviction must, on conviction, be fined not more than $500.00.”
*447 § 14-6-6 “In all criminal cases, either before or after conviction, and in cases of contempt, if it is shown to the court, judge or committing magistrate that the jail of the proper county is insecure or insufficient for the safekeeping of the prisoner or that there is no jail in the county, the commitment must be to the nearest sufficient jail and the reason of such change must be entered on the minutes of the court, or stated in the warrant or endorsed thereon and signed by the magistrate. The jailer of the county to which the commitment is made must receive and confine the prisoner on such commitment or a certified copy of such order.”
(Emphasis added.)
A comparison of H.B. 42, § 2, with §§ 14-6-3 through -6 compels the conclusion that the provisions of § 2 would create a variance from the provisions in these statutes insofar as they apply to Escambia County. Sections 14-6-3 through -6 require Escambia County officials summarily, under the threat of criminal penalties, to provide accommodations for designated persons other than those “sentenced to imprisonment in the county jail,” § 14-6-3. These persons include federal prisoners, § 14-6-3(5) and § 14-6-4; and prisoners from other counties, § 14-6-3(7) and § 14-6-6. The last sentence of H.B. 42, § 2, authorizing Escambia County “to contract housing of federal, municipal, and. county prisoners other than Escambia County prisoners” (emphasis added), would transform Escambia County’s duty to house such persons from one that is unqualified and mandatory to one that is contingent upon the payment of a fee. Because that portion of H.B. 42 would create a variance from the provisions of general statutes, particularly §§ 14-6-3 through -6, we must conclude that the subject of that portion of H.B. 42 is, indeed, “subsumed” by those statutes.
We conclude, therefore, that the last sentence of the proposed local act, H.B. 42, §' 2, would violate § 105 of the Alabama Constitution. This conclusion obviates the need to consider questions 1 and 3 of Resolution 70.
Respectfully submitted,
SONNY HORNSBY Chief Justice
RENEAU P. ALMON JANIE L. SHORES HENRY B. STEAGALL, II KENNETH F. INGRAM RALPH D. COOK Justices