STUART, Justice.
Cynthia Underwood, revenue commissioner for the Alabama Department of Revenue, and Sarah G. Spear, revenue commissioner for Montgomery County, appeal the trial court’s judgment holding that the Goode Medical Building, which is owned by The Medical Clinic Board for the City of Montgomery (“the Medical Clinic Board”) and is leased to Jackson Hospital & Clinic, Inc. (“Jackson Hospital”), is statutorily exempt from the assessment and payment of ad valorem taxes.

Facts

In 1969, Jackson Hospital asked the Medical Clinic Board to issue bonds to finance the construction of various facilities on property owned by Jackson Hospital and located near its hospital facility. At that time, to secure the bonds ultimately issued by the Medical Clinic Board, Jackson Hospital deeded its real property, including the real property upon which the Goode Medical Building .was later eon- • structed, and its equipment to the Medical Clinical Board. The Medical Clinical Board then financed, through the sale of bonds, the construction of the Goode Medical Building.
Presently, the Medical Clinic Board leases the Goode Medical Building to Jackson Hospital. The Goode Medical Building is a freestanding structure connected to the hospital by a walkway. It provides approximately 121,000 square feet of rentable space for hospital administrative offices, laboratory facilities, physicians’ offices, and other tenants who provide support for the hospital and its employees, the physicians, and the patients. The lease agreement pursuant to which Jackson Hospital leases the Goode Medical Building provides that Jackson Hospital is responsible for paying all taxes that may be-lawfully assessed with respect to the Goode Medical Building. This lease agreement also serves as security for the bonds issued by the Medical Clinic Board that financed the construction of the Goode Medical Building.
Jackson Hospital subleases the majority of the rentable space in the Goode Medical Building for physicians’ offices, laboratories, and hospital administrative offices. Jackson Hospital subleases 1.1 percent of the rentable space to Regions Bank, which operates a branch office in the building, and 1.9 percent of the rentable space to a medical-equipment company.[1] It also subleases otherwise nonusable space on the roof of the Goode Medical Building to a cellular telephone company for the placement of two antennae and to an Internet company for the placement of several satellite dishes. Additionally, Jackson Hospital permits WSFA-TV, a local Montgomery television station, to place a camera used to give viewers a panoramic view of Montgomery on the roof of the Goode Medical Building free of charge. Jackson Hospital pays the revenue generated by subleasing the space in and on the Goode Medical Building to the Medical Clinic Board to satisfy the debt on the bonds.
Until 2001 the Goode Medical Building had never been considered property subject to assessment of ad valorem taxes. In 2001, Tommie Miller, the chief appraiser for the Montgomery County revenue commissioner’s office, determined that by permitting Jackson Hospital to sublease por *266 tions of the Goode Medical Building to non-health-related entities the Medical Clinic Board was not acting consistently with the purpose of medical clinic boards set forth in § 11-58-2, Ala.Code 1975. Miller concluded that because, he believed, the Medical Clinic Board was not acting within its statutory purpose, the Goode Medical Building was subject to assessment of ad valorem taxes. Underwood and Spear agreed with Miller, and Spear assessed the Goode Medical Building for ad valorem taxes.
In 2002 Underwood and Spear sought a judgment declaring that the Goode Medical Building was subject to being assessed for ad valorem tax purposes. At trial, Underwood and Spear maintained that the Medical Clinic Board owed ad valorem taxes for the Goode Medical Building in excess of $150,000 for the two years immediately prior to trial. The trial court held that the Medical Clinic Board was subject to the clear and specific statutory exemption from ad valorem taxes found in § 11-58-14, Ala.Code 1975, and that, therefore, the Medical Clinic Board was not liable for ad valorem taxes for those years.

Standard of Review

“ ‘The trial court’s interpretation of [a statute] involves a question of law; it is reviewed de novo by an appellate court, without any presumption of correctness.’ Simcala, Inc. v. American Coal Trade, Inc., 821 So.2d 197, 200 (Ala.2001).” Douglas v. King, 889 So.2d 534, 539 (Ala. 2004).

Legal Analysis

Initially, we note that the Medical Clinic Board disclaims any reliance on exemptions based on the use of the property for charitable purposes, see subsection (k) of Amendment No. 373, Ala. Const.1901, and § 40-9-l(a), Ala.Code 1975; therefore, we do not determine the applicability, if any, of those charitable exemptions in this case.
Underwood and Spear contend that the trial court erred in holding that § 11-58-14, Ala.Code 1975, provides the Goode Medical Building an exemption from the assessment of ad valorem taxes. They argue that the trial court failed to give proper weight to their interpretation of the Code and that the trial court erred in failing to resolve any issue regarding legislative intent in favor of the revenue commissioners.
The Legislature authorized the creation of corporations, known as medical clinic boards, to acquire and operate county and municipal medical clinics “to promote the public health of the people of Alabama.” § 11-58-2, Ala.Code 1975. A “medical clinic” is defined as:
“Any one or more of buildings or facilities operated by a county or municipal medical clinic board which serve to promote the public health, either by providing places for the diagnosis, treatment, or cure of sick or injured persons or for research with respect to any of the foregoing, including, without limiting the generality of the foregoing, hospitals, sanitariums, nursing homes, offices for persons engaged in the diagnosis, treatment or cure of sick and injured persons, buildings to house or service equipment used for the diagnosis or treatment of sick or injured persons or the records of the diagnosis, treatment, or research with respect to any of the foregoing and hotels and motels intended primarily for use by patients and relatives and attendants of patients or patrons of any medical clinic, as well as domiciliary facilities so long as the domiciliary facility is required to be approved or licensed by any federal, state, or local government agency having jurisdiction in the planning or operation of health *267 care facilities, or is owned or operated in conjunction with any nursing home. Domiciliary facilities shall not be exempt from ad valorem taxation.”
§ 11-58-1(3), Ala.Code 1975.
To enable medical clinic boards to establish medical clinics, the Legislature authorized such boards to issue bonds to carry out their public purpose. § 11-58-5(8), Ala. Code 1975. Additionally, the boards are authorized “[t]o lease to others one or more medical clinics or parts of clinics and any clinical facilities, to charge and collect rent therefor” provided that the lease does not “extend beyond the last maturity of any bonds issued by the medical clinic board.” § 11-58-5(6), Ala.Code 1975. Lastly, the Legislature specifically provided:
“The bonds authorized by this chapter and the income therefrom, all mortgages executed as security therefor, all lease agreements made pursuant to the provisions hereof and all property and the revenue derived from any lease thereof shall he exempt from all taxation in the State of Alabama.”
§ 11-58-14, Ala.Code 1975 (emphasis added).
Underwood and Spear argue that because non-health-related entities, which sublease space in the Goode Medical Building from Jackson Hospital, do not “promote the acquisition of health facilities in order to promote the public health of the people of Alabama,” § ll-58-2(a), the exemption granted in § 11-58-14, Ala.Code 1975, to the Medical Clinic Board is inapplicable and the Goode Medical Building is subject to ad valorem taxes. Specifically, they argue that the agreements pursuant to which Jackson Hospital subleases property to the non-health-related companies are not consistent with the purposes for which the Medical Clinic Board was formed; therefore, they argue, the exemption applicable to facilities financed by bonds issued by medical clinic boards does not apply in this case:
“[I]t is only when a medical clinic board uses or leases property pursuant to the provisions of the Act [§ 11-58-1 et seq., Ala.Code 1975], or in furtherance of the purpose of the Act, that such property should be exempt from ad valorem taxation. A contrary result would lead to absurd conclusions and allow medical clinic boards to acquire property to be used for any purpose and still be exempt from ad valorem taxation. This was not the intent of the Alabama Legislature in enacting the Act and providing exemptions from taxation.”
(Underwood’s brief at p. 20.)
The Medical Clinic Board argues that the plain language of § 11-58-14, Ala.Code 1975, does not provide that to qualify for the exemption offered therein the property must be used exclusively for “charitable” or “hospital purposes”; therefore, it argues, in determining whether the property is subject to taxation the use of the property is irrelevant and the Goode Medical Building is exempt from assessment from ad valorem taxes.
“In DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (1998), we explained the process of statutory construction:
“ ‘In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the stat-%de is unambiguous, then there is *268 no room for judicial construction and the clearly expressed intent of the legislature must be given effect: ”
“ ‘Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)(quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).... It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997).’ ”
Ex parte National Western Life Ins. Co., 899 So.2d 218, 223 (Ala.2004).
Moreover, as the Alabama Court of Civil Appeals has recognized:
“ ‘In construing statutes granting exemption from taxation, the Supreme Court has expressed the rule as follows: “... The ‘universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.’ ”
“ ‘It has long been the rule in this state that one seeking an exemption from taxation assumes the burden to clearly establish the right. In all cases of doubt as to legislative intention, the presumption is in favor of the taxing power.’ ”
HLH Constructors, Inc. v. State Dep’t of Revenue, 902 So.2d 680, 684 (Ala.Civ.App. 2004), quoting Brundidge Milling Co. v. State, 45 Ala.App. 208, 210, 228 So.2d 475, 477 (Civ.App.1969).
Section 11-58-14, Ala.Code 1975, specifically states: “all property and the revenue derived from any lease thereof shall be exempt from all taxation in the State of Alabama.” The plain meaning of the words of § 11-58-14 is that all property of a medical clinic board is exempt from taxation. There is no room for judicial construction of that statute to mean, as Underwood and Spear argue, that the tax exemption applies only if the property is used in accordance with the provisions of § 11-58-1 et seq. Because the language of § 11-58-14 is clear and unambiguous and does not provide any room for judicial construction, we must give clear effect to the Legislature’s intent in enacting the statute. Therefore, we hold that § 11-58-14 requires that all property owned by a medical clinic board be exempt from assessment of ad valorem taxes. Here, it is undisputed that the Medical Clinic Board has continuously owned the Goode Medical Building since its construction. It is also undisputed that the Medical Clinic Board leased the Goode Medical Building, pursuant to the provisions of § 11-58-6, Ala. Code 1975,[2] to Jackson Hospital. Therefore, the Medical Clinic Board is exempt from ad valorem taxes. The plain language of § 11-58-14 unambiguously requires this result.
*269 Our resolution of this issue pretermits consideration of the other issues raised on appeal.

Conclusion

Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
NABERS, C.J., and HOUSTON, SEE, LYONS, JOHNSTONE, and WOODALL, JJ., concur.
HARWOOD, J., concurs specially.
BROWN, J., recuses herself.

. Jackson Hospital is a part owner of the medical-equipment company.

. Section 11-58-6, Ala.Code 1975, provides the requirements a medical clinic board must satisfy to lease medical clinics or clinical facilities owned by the board and provides for the disposition of the revenue from those leases.