The City of Homewood ("the City") appeals from a judgment declaring invalid the City's Ordinance No. 2226 ("the ordinance"), which levied a "lodgings tax" of 6% for the privilege of furnishing accommodations within the City. We reverse that judgment and render a judgment for the City.
 I. Factual Background
The ordinance, which was adopted on November 22, 2004, provides, in pertinent part:
 "Section 1. That Sections One and Two of Ordinance 1969 previously adopted on November 17, 1997, and as codified as Section 6-131, entitled `Levy of Tax' of Article VII entitled `Hotel/Motel Tax' of Chapter 6, entitled `Business Licenses, Taxes and Regulations' of the Code of Ordinances of the City of Homewood is hereby amended to read as follows:
 "Sec. 6-131
 "For the privilege of engaging or continuing, within the city, in the business activities hereinafter referred to, there is hereby levied and imposed, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amounts to be determined by the application of rates against gross receipts upon every person, firm, or corporation engaging in the business of renting or furnishing any room or rooms, lodgings, or accommodations to transients in any hotel, motel, inn, tourist camp, tourist cabin or any other place in which rooms, lodgings, or accommodations are regularly furnished to transients for a consideration in an amount to be determined by the application of the rate of six (6) percent of the charge for such room, rooms, lodgings, or accommodations, including the charge for use or rental of personal property and services furnished in such room. The tax shall not apply to rooms, lodgings or accommodations supplied for a period of thirty (30) continuous days or more in any place."
(Emphasis added.) The ordinance, which took effect on January 1, 2005, doubled the rate of the lodgings tax that was in effect before that date.
As of the effective date of the ordinance, the legislature had enacted Act No. 2001-546 (May 18, 2001), a local act that, according to its title, was enacted to "provide for the levy of an additional three percent lodgings tax in Jefferson County to be used by the Birmingham-Jefferson Civic Center Authority for the support of the operation of the authority, including . . . capital expansion, renovation, and maintenance; and to providefor a limitation on *Page 699 the tax." (Emphasis added.) Specifically, Act No. 2001-546
provides, in pertinent part:
 "Section 1. In addition to all other taxes imposed by law, there is hereby levied an additional privilege or license tax in the amount hereinafter prescribed against any person, organization, or other entity engaging in the county in the business of renting or furnishing any room or rooms, lodgings, or accommodations, in any hotel, motel, inn, tourist court, or any other place in which rooms, lodgings, or accommodations are regularly furnished for a consideration. The amount of the taxes levied by this act shall be equal to three percent of the charge for such rooms, lodgings, or accommodations. . . .
 "Section 2. All amounts collected within Jefferson County pursuant to this act shall be allocated to the Birmingham — Jefferson Civic Center Authority, established by Act No. 547, H. 1176 of the 1965 Regular Session, and shall be used for the support of the operation of the authority, including, but not limited to, capital expansion, renovation, and maintenance.
 ". . . .
 "Section 7. Notwithstanding any other provision of law to the contrary, the total amount of all lodging taxes levied in Jefferson County shall not exceed 14 percent."
(Emphasis added.)
On December 29, 2004, a complaint challenging the ordinance was filed by Bharat, LLC, d/b/a Howard Johnson's Express Inn, on its own behalf and on behalf of all other similarly situated taxpayers, and by the Greater Birmingham Lodging Association, "an Alabama non-profit corporation, on its own behalf and on the behalf of the members of the Greater Birmingham Lodging Association located within the City of Homewood" (hereinafter collectively referred to as "Bharat"). The complaint named the City as the defendant and averred that "[t]he additional lodging taxes violate the cap on lodging taxes imposed by [Act No.2001-546, § 7]." (Emphasis added.) The complaint further averred that the ordinance raised "the lodging tax levied and collected in the City of Homewood to a total of seventeen percent (17%), which amount exceeds the cap mandated by [Act No. 2001-546, § 7] by three percent (3%)." The complaint sought a judgment declaring the ordinance void as violating Act No. 2001-546, § 7, and enjoining the City "from collecting the additional lodging taxes pursuant to the ordinance."
The City answered the complaint and asserted a counterclaim challenging the constitutionality of Act No. 2001-546, or, in the alternative, its applicability to the City. More specifically, the City averred that the ordinance was authorized by a "general law," namely, Ala. Code 1975, §§ 11-51-202(b) and -205(a), parts of the Local Tax Simplification Act of 1998 ("the Simplification Act"). Those sections provide, in pertinent part:
 "[§ 11-51-202(b)] The governing body of any municipality within the State of Alabama may provide by ordinance for the levy and assessment of a privilege or license tax in the nature of a lodgings tax, parallel to the state levy and assessment of the privilege or license tax as levied by Chapter 26 of Title 40, except where inapplicable or where otherwise provided by this article."
 "[§ 11-51-205(a)] The governing body of a municipality levying or assessing taxes authorized by this article may *Page 700 provide by ordinance for the rate of the tax."
(Emphasis added.)
The crux of the City's counterclaim is that the ordinance "is provided for by a general law," within the meaning of Ala. Const. 1901, § 105, which states:
 "No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law,
or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law."
(Emphasis added.) The City alleged that if Act No. 2001-546, § 7, is construed to limit the amount of lodgings taxes amunicipality located in Jefferson County might levy, it represents an improper attempt by the legislature to change a general law by a local act. Thus, the City sought a judgment declaring that § 7 of Act No. 2001-546, to the extent it applies to municipalities, violates § 105 of the Alabama Constitution and is therefore void.
The case was tried on stipulated facts. On January 13, 2005, the trial court entered a judgment holding (1) that Act No.2001-546 applied to municipalities located in Jefferson County; (2) that Act No. 2001-546, § 7, did not violate § 105 of the Alabama Constitution; and (3) that the ordinance was subject to — and violated — the tax limitation in Act No. 2001-546, § 7.
The City moved to alter, amend, or vacate the judgment. After the trial court denied that motion, the City timely appealed, presenting two dispositive legal issues: (1) whether Act No.2001-546, § 7, applies to municipalities located in Jefferson County, and, if so, (2) whether the tax limitation in § 7 violates § 105 of the Alabama Constitution.
 II. Discussion
It is undisputed that the Simplification Act is a "general law," see Ala. Const. 1901, § 110 ("[a] general law . . . is a law which applies to the whole state"), and that Act No.2001-546, which pertains only to Jefferson County is a "local law," see § 110 ("a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole"). The Alabama Constitution does not prohibit the passage of local acts to address the needs of discrete political subdivisions. Miller v. Marshall County Bd. of Educ.,652 So.2d 759, 761 (Ala. 1995). "`It is only when those local needs already have been responded to by general legislation that § 105 of our state Constitution prohibits special treatment by local law.'"652 So.2d at 761 (quoting Peddycoart v. City of Birmingham,354 So.2d 808, 815 (Ala. 1978)).
 A. Scope of the Local Act
The scope of Act No. 2001-546, § 7, is a threshold issue. This is so, because the sole basis for Bharat's claims is its contention that § 7 applies to the City. Bharat insists that the tax authorized by the ordinance exceeds by 3% the 14% tax limitation contained in § 7 of Act No. 2001-546. Bharat contends, in other words, that § 7 caps the amount of lodgings taxes the City may levy, and that the lodgings taxes authorized by the ordinance exceeded the § 7 cap. Thus, if § 7 does not evenapply to the City, then there is no basis for Bharat's challenge to the ordinance, the trial court erred in holding that the ordinance violated Act No. 2001-546, *Page 701 
and the constitutional issue asserted in the City's counterclaim is moot.
"We review questions of statutory construction and interpretation de novo, giving no deference to the trial court's conclusions." Pitts v. Gangi, 896 So.2d 433, 434 (Ala. 2004). See also Donnelly v. Doak, 346 So.2d 414 (Ala. 1977); PhenixCity Bd. of Educ. v. Teague, 515 So.2d 971 (Ala.Civ.App. 1987). Moreover, we are obliged to construe statutes so as to avoid conflicts with constitutional provisions if possible. James v.Todd, 267 Ala. 495, 505, 103 So.2d 19, 27 (1957) ("[w]here a statute is capable of two constructions, one which renders it [constitutionally] valid and the other invalid, the construction which will uphold its validity must be adopted"). Nevertheless, this Court is also bound to construe statutes according to their plain meaning. Underwood v. Medical Clinic Bd. for City ofMontgomery, 904 So.2d 264, 267-68 (Ala. 2004).
Bharat insists that "the limitation contained in Section 7 of [Act No. 2001-546] applies to municipalities in Jefferson County, including the City of Homewood." Bharat's brief, at 34. Indeed, § 7 states: "Notwithstanding any other provision of law to the contrary, the total amount of all lodging taxes levied inJefferson County shall not exceed 14 percent." (Emphasis added.)On its face, Act No. 2001-546, therefore, plainly applies to lodgings taxes assessed by municipalities located within Jefferson County, including the City.
Moreover, Bharat points out that the lodgings-tax burden in Jefferson County before the imposition of the tax authorized by the ordinance is 11%, the product of a general act and five local acts. See Ala. Code 1975, § 40-26-1 (4% to be "deposited in the State Treasury," § 40-26-20); Act No. 2001-546 (3% to be "allocated to the Birmingham-Jefferson Civic Center Authority"); Act No. 95-783, a local act (1% to be "allocated to the Greater Birmingham Convention and Visitors Bureau"), as amended by Act No. 97-273, a local act; Act No. 79-126, a local act (1% to be "allocated to the Greater Birmingham Convention and Visitors Bureau"); and Act No. 794, Ala. Acts 1969, a local act (1% to be paid to Greater Birmingham Convention and Visitors Bureau); and Act No. 525, Ala. Acts 1965, a local act (1% to be paid to the Birmingham-Jefferson Civic Center Authority). It is undisputed that counties have no authority to levy a lodgings tax. It is similarly undisputed that municipalities do have authority to levy a lodgings tax, pursuant to § 11-51-202(b). Thus, Bharat contends, the only rational interpretation of § 7 is that it applies to the only entities in Jefferson County with the statutory authority to levy lodgings taxes — municipalities. We agree, and we conclude that the trial court did not err in holding that the limitation on lodgings taxes in Act No.2001-546, § 7, applies to municipalities located in Jefferson County. This conclusion necessarily requires us to consider whether Act No. 2001-546, § 7, violates § 105 of the Alabama Constitution.
 B. Alabama Constitution § 105
Section 105 of the Alabama Constitution prohibits the passage of local laws purporting to regulate matters that are "providedfor by a general law." A matter is "provided for by a general law" within the meaning of § 105 if the "subject [of the localact] is already subsumed by [a] general statute." Peddycoart,354 So.2d at 813. The City contends that Act No. 2001-546, § 7, is "subsumed" by §§ 11-51-202(b) and -205(a). "The subject of a local law is deemed to be `subsumed' in a general law if the effect of the local law is to create a variance from the provisions of the general law." Opinion of the Justices No.342, 630 So.2d 444, 446 (Ala. 1994) (emphasis *Page 702 
added); see also Crandall v. City of Birmingham, 442 So.2d 77,80 (Ala. 1983).
Applying these principles in Opinion of the Justices No. 342,
the Justices considered the likely constitutionality of House Bill No. 42 ("H.B. 42"), a proposed local act applicable to the housing of prisoners by the sheriff of Escambia County.630 So.2d at 444-45. H.B. 42, § 2, provided:
 "`The Sheriff of Escambia County is authorized to operate a jail store and contract telephone installation for inmates within the confines of the county jail. The jail store and inmate telephones shall be operated to serve the needs of the county jail population. The sheriff is further authorized to contract housing of federal, municipal, and county prisoners other than Escambia County prisoners.'"
630 So.2d at 445 (emphasis added). The following dispositive question was posed to the Justices by the House of Representatives:
 "`Under Section 14-6-3, Code of Alabama 1975, a jail is required to be used for the confinement of all persons committed to it by authority of law. Section 14-6-4, Code of Alabama 1975, requires a sheriff to receive into custody any person committed under any criminal charge or offense against the United States. Do these sections subsume the law regarding the housing of prisoners in a county jail and is a local law permitting the sheriff to contract housing for prisoners in conflict with the general law in violation of Section 105 of the Constitution of Alabama of 1901?'"
630 So.2d at 445 (emphasis added).
Of specific concern to the Justices was the following provision in § 2 of H.B. 42: "The sheriff [of Escambia County] is further authorized to contract housing of federal, municipal, and county prisoners other than Escambia County prisoners." Comparing the proposed local act with the applicable general statutes,
Ala. Code 1975, §§ 14-6-3 through -6, the Justices concluded that § 2 of H.B. 42 "would create a variance from the provisions in [those] statutes insofar as they apply to Escambia County" and would, therefore, violate § 105. 630 So.2d at 447 (emphasis added). In so doing, the Justices explained:
 "Ala. Code 1975, §§ 14-6-3 through -6, are general statutes regulating the `housing of prisoners in a county jail.' . . . Those sections provide:
 "§ 14-6-3 `In addition to convicts sentenced to imprisonment in the county jail, the jail is used as a prison for the safekeeping or confinement of the following persons:
 "`(1) Persons committed for trial for public offenses;
 "`(2) Convicts sentenced to imprisonment in the penitentiary, until their removal thereto;
 "`(3) Persons committed for contempt or on civil process;
 "`(4) Persons committed on failure to give security for their appearance as witnesses in any criminal case;
 "`(5) Persons charged with, or convicted of, a criminal offense against the United States;
 "`(6) Insane persons, pending transfer to a mental hospital or other disposition; and
 "`(7) All other persons committed thereto by authority of law.'
 "____
 "§ 14-6-4 `The sheriff or jailer must, if the jail of the county is sufficient, receive into his custody any person committed under any criminal charge or offense against the United States and safely keep such prisoner, *Page 703 
according to the order or process of commitment, until duly discharged by law; and he is liable to the same penalties for the escape of such prisoner as for the escape of a prisoner committed under the authority of this state.'
 "____
 "§ 14-6-5 `Any jailer or other officer who willfully refuses to receive into his custody any person lawfully committed thereto on any criminal charge or conviction must, on conviction, be fined not more than $500.00.'
 "____
 "§ 14-6-6 `In all criminal cases, either before or after conviction, and in cases of contempt, if it is shown to the court, judge or committing magistrate that the jail of the proper county is insecure or insufficient for the safekeeping of the prisoner or that there is no jail in the county, the commitment must be to the nearest sufficient jail and the reason of such change must be entered on the minutes of the court, or stated in the warrant or endorsed thereon and signed by the magistrate. The jailer of the county to which the commitment is made must receive and confine the prisoner on such commitment or a certified copy of such order.'
 "(Emphasis added.)
 ". . . Sections 14-6-3 through -6 require Escambia County officials summarily, under the threat of criminal penalties, to provide accommodations for designated persons other than those `sentenced to imprisonment in the county jail,' § 14-6-3. These persons include federal prisoners, § 14-6-3(5) and § 14-6-4; and prisoners from other counties, § 14-6-3(7) and § 14-6-6. The last sentence of H.B. 42, § 2, authorizing Escambia County `to contract
housing of federal, municipal, and county prisoners other than Escambia County prisoners' (emphasis added), would transform Escambia County's duty to house such persons from one that is unqualified and mandatory to one that is contingent upon the payment of a fee. Because that portion of H.B. 42 would create a variance from the provisions of general statutes, particularly §§ 14-6-3 through -6, we must conclude that the subject of that portion of H.B. 42 is, indeed, `subsumed' by those statutes.
 "We conclude, therefore, that the last sentence of the proposed local act, H.B. 42, § 2, would violate § 105 of the Alabama Constitution."
630 So.2d at 446-47.
Regarding the validity of the 14% cap contained in § 7 of Act No. 2001-546, the parties agree that the only limitation on the amount of lodgings taxes municipalities located in Jefferson County may levy is contained in § 7 of the local act. In that connection, Bharat states: "Homewood argues that pursuant to [§§11-51-202(b) and -205(a)], it has unlimited discretion to determine a lodging tax rate to be collected within Homewood. Inthe absence of the limitation contained in Act 2001-546, thatwould be true." Bharat's brief, at 8 (emphasis added).
On the undisputed facts of this case, we are compelled to conclude, as did the Justices in Opinion of the Justices No.342, that the local act creates a variance from the general act. In that case, the proposed local act purported to grant discretion as to certain duties where the general acts provided that those duties were mandatory. In this case, the local act purports to limit the discretion of municipalities in levying a lodgings tax, while the general act specifically grants that discretion. *Page 704 
Section 7 necessarily changes the result that would obtain without its application. In effect, the legislature has purported to cap by use of local law a tax authorized by a general law.
This the constitution will not permit.
Indeed, if the constitution did permit it, the legislature could, by a local act, entirely eliminate the City's right to levy lodgings taxes, despite the unqualified right granted to it in the general act. For example, under the current taxation scheme, the State of Alabama receives, pursuant to a general act, lodgings taxes at a rate of 4%; the Birmingham-Jefferson Civic Center Authority receives, pursuant to two local acts, 4%; and the Greater Birmingham Convention and Visitors Bureau receives, pursuant to three local acts, 3%. This scheme thus limits municipalities located in Jefferson County to lodgings taxes of 3% they can levy for their own use (14%, as capped by § 7 of Act No. 2001-546, minus 11%). If the legislature should pass another local act allocating the 3% that remains under the 14% cap of Act No. 2001-546, § 7, to, for example, the Birmingham-Jefferson Civic Center Authority or the Greater Birmingham Convention and Visitors Bureau, then Jefferson County municipalities would be, assuming the validity of Act No.2001-546, § 7, prohibited from levying any amount of lodgings tax for their own use. This would be true notwithstanding the clear grant of taxation authority in § 11-51-202(b).
Bharat relies on the last clause of § 11-51-202(b) — "exceptwhere inapplicable or where otherwise provided by this article." (Emphasis added.) Bharat states:
 "Accordingly, the authority of any municipality, including the City of Homewood, to levy a lodgings tax is subject to the limitation that it may not be levied where that authority may be inapplicable as a result of requiring compliance with applicable local tax laws, such as Act 2001-546. [Section 11-51-202(b)] does not give Homewood unbridled discretion to levy a lodgings tax in excess of a limitation compelled by an applicable local tax law such as Act 2001-546."
Bharat's brief, at 9-10 (emphasis added). Bharat construes the last clause of § 11-51-202(b) as reserving an exception to the general law for any local laws the legislature might pass, or has passed, on the subject "provided for by [that] generallaw." § 105.
We disagree with this construction. The meaning of the phrase "except where inapplicable" is discussed in § 11-51-200:
 "The phrase `except where inapplicable,' contained herein and in Sections 11-51-201, 11-51-202, and 11-51-203, shall not be construed to permit a self-administered municipality to adopt or interpret an ordinance, resolution, policy, or practice that relies on that phrase, either directly or indirectly, in order to disavow, disregard, or attempt to disavow or disregard the mandate provided in this and the following sections for conformity with the corresponding state tax levy, unless the self-administered municipality can demonstrate that the ordinance, resolution, policy, or practice will simplify collection or administration of the tax or is being made for the convenience of the taxpayer."
(Emphasis added.) Thus, the phrase has in view "procedural tax collection and administration issues," the City's reply brief, at 6, in addition to "the corresponding state tax lev[ies]" to which the taxing powers in the Simplification Act are expressly linked. For example, the taxation authorization in § 11-51-202(b) is made "parallel to the state levy" in § 40-26-1. Section 40-26-1
provides, in pertinent part: *Page 705 
 "(a) There is levied and imposed, in addition to all other taxes of every kind now imposed by law, a privilege or license tax upon every person, firm, or corporation engaging in the business of renting or furnishing any room or rooms, lodging, or accommodations to transients in any hotel, motel, inn, tourist camp, tourist cabin, or any other place in which rooms, lodgings, or accommodations are regularly furnished to transients for a consideration, in any county which is located in the geographic region comprising the Alabama mountain lakes area, those being Blount, Cherokee, Colbert, Cullman, DeKalb, Etowah, Franklin, Jackson, Lauderdale, Lawrence, Limestone, Madison, Marion, Marshall, Morgan, and Winston, in an amount to be determined by the application of the rate of five percent of the charge for such room, rooms, lodgings, or accommodations, including the charge for use or rental of personal property and services furnished in such room, and the rate of four percent of the charge in every other county. There is exempted from the tax levied under this chapter any rentals or services taxed under Division 1 of Article 1 of Chapter 23 of this title.
 (b) "The tax shall not apply to rooms, lodgings, or accommodations supplied: (i) For a period of 180 continuous days or more in any place; (ii) by camps, conference centers, or similar facilities operated by nonprofit organizations primarily for the benefit of, and in connection with, recreational or educational programs for children, students, or members or guests of other nonprofit organizations during any calendar year; (iii) in connection with the production of an approved project authorized by the Alabama Film Office and which meets criteria established by the Alabama Film Office through the Alabama Administrative Procedure Act; or (iv) by privately operated camps, conference centers, or similar facilities that provide lodging and recreational or educational programs exclusively for the benefit of children, students, or members or guests of nonprofit organizations during any calendar year."
(Emphasis added.)
Subsections (a) and (b) of § 40-26-1 contain numerous exemptions and exceptions to the applicability of the State
lodgings tax, each of which qualifies the taxation authority granted to municipalities in § 11-51-202(b). This is so because the taxes authorized by § 11-51-202(b) must "parallel" those levied by the State in § 40-26-1. See also § 11-51-203 (making "[a]ll taxes levied or assessed by any municipality pursuant to the provisions of Section 11-51-202 . . . subject to all definitions, exceptions, exemptions, proceedings, requirements, provisions, rules and regulations promulgated under the Alabama Administrative Procedure Act, direct pay permit and drive-out certificate procedures, statutes of limitation, penalties, fines, punishments, and deductions for the corresponding state tax"). Thus, the phrase "except where inapplicable" does not afford, as Bharat contends, a means to circumvent § 105.
 III. Conclusion
In conclusion, we hold that Act No. 2001-546, § 7, to the extent it limits the amount of lodgings taxes municipalities located in Jefferson County may levy pursuant to § 11-51-202(b), violates § 105 of the Constitution of Alabama, and is, therefore, invalid. The ordinance is valid and enforceable as of its effective date of January 1, 2005. Because the trial court erred in holding that the ordinance was invalid and in entering a judgment in favor of Bharat, that judgment is reversed and a judgment *Page 706 
rendered in favor of the City as to all claims asserted against it by Bharat.
REVERSED AND JUDGMENT RENDERED.
SEE, LYONS, HARWOOD, STUART, and SMITH, JJ., concur.
NABERS, C.J., and BOLIN and PARKER, JJ., dissent.