955 So.2d 1012 (2006)
STATE of Alabama ex rel. Troy KING, in his official capacity as Attorney General of Alabama; and Bob Riley, in his official capacity as Governor of Alabama
v.
Joe MORTON, in his official capacity as State Superintendent of Education, et al.
State of Alabama ex rel. Troy King, in his official capacity as Attorney General of Alabama; and Bob Riley, in his official capacity as Governor of Alabama
v.
Lucy Baxley, in her official capacity as Lieutenant Governor of Alabama, et al.
1051771 and 1051814.
Supreme Court of Alabama.
October 12, 2006.
*1014 Troy King, atty. gen.; Kevin C. Newsom, deputy atty. gen., Scott L. Rouse, deputy legal advisor, office of the Governor; and James W. Davis, asst. atty. gen., for appellant.
Joe Espy III and J. Flynn Mozingo of Melton, Espy & Williams, PC, Montgomery, for appellee the Joint Fiscal Committee.
PER CURIAM.
The State of Alabama on the relation of Troy King, Attorney General of Alabama, and Bob Riley, Governor of Alabama ("the State"), challenges the constitutionality of Act No. 2006-511, codified at §§ 29-2-121, 29-2-123, and 41-24A-1, Ala.Code 1975.[1] The trial court upheld the constitutionality of Act No. 2006-511 against the State's challenge, and the State appeals (case no. 1051814). The State also filed a separate appeal, seeking an injunction prohibiting the defendants from disbursing any funds pending the disposition of its appeal (case no. 1051771). In case no. 1051814, we affirm; we dismiss as moot case no. 1051771.

Facts and Procedural History
In 1998, the Legislature passed Act No. 98-677, Ala. Acts 1998, codified at Ala. Code 1975, §§ 29-2-120 to -124. Section 29-2-121 created a "permanent Joint Legislative Oversight Committee on Community Services Grants" (the "Legislative Oversight Committee"), made up of eight members of the Legislature. The Legislative Oversight Committee was charged with reviewing "community services" grant applications. Section 29-2-123 authorized the Legislative Oversight Committee to "become a grant-making agency and receive and distribute any appropriations made by the Legislature to the committee for the community services grant program pursuant to Chapter 24 of Title 41." As a grant-making agency, the Legislative Oversight Committee evaluated grant proposals based on certain criteria and either approved or rejected the proposals. Id.
This community-services-grant process established by Act No. 98-677 and the appropriations in Act No. 2004-456, the education-appropriations act, for the community-services grants were held unconstitutional in McInnish v. Riley, 925 So.2d 174, 176 (Ala.2005). This Court held in McInnish that § 29-2-123 encroached on the powers specifically reserved to the executive branch of government by the Alabama Constitution:
"[W]e hold that § 29-2-123, which authorizes a permanent joint legislative committee to award community-services grants, and so much of Act No. 2004-456 by which those grants are funded `constitute,' in the words of the complaint, an `encroachment of the executive powers specifically reserved to the executive branch of government by the Alabama Constitution.' The legislature cannot, consistent with § 42 and § 43, execute the laws it enacts. See Bowsher v. Synar, 478 U.S. [714] at 726, 106 S.Ct. 3181 [(1986)]; Stockman v. Leddy, 55 Colo. [24] at 31, 129 P. [220] at 223 [ (1912) ].
". . . .

*1015 "`"[W]here the whole power of one department is exercised by the same hands which possess the whole power of another department, the fundamental principles of a free constitution, are subverted."' Mistretta v. United States, 488 U.S. 361, 381, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (quoting The Federalist No. 47, at 325-26 (James Madison) (J. Cooke ed.1961) (emphasis in The Federalist)). Because the grant-making process created by § 29-2-123 begins and ends in the legislature, it violates the separation-of-powers provisions of the Constitution of Alabama."
925 So.2d at 188.
In 2006, after this Court had issued its opinion in McInnish, the Legislature passed Act No. 2006-511 ("the Act").[2] The Act created the State Executive Commission on Community Services Grants (the "Executive Commission"), which, according to §§ 41-24A-1 and 41-24-2 to -5, Ala.Code 1975, is a "grant-making agency."[3] Further, the Act empowers the Executive Commission to distribute any appropriations made by the Legislature to the Executive Commission for the community-services-grant program. The Executive Commission is composed of certain members of the executive department, namely, the State Superintendent of Education, the Lieutenant Governor, the State Treasurer, and the Commissioner of Agriculture and Industries. The Governor does not serve on the Executive Commission, and he does not have any authority to appoint its members, directly oversee its actions, or veto its decisions.
The Act also amended §§ 29-2-121 and -123, to redesignate the Legislative Oversight Committee as the "Legislative Advisory Committee on Community Service Grants" ("the Legislative Advisory Committee"). Under the Act, legislators submit grant applications to the Legislative Advisory Committee,[4] which is composed entirely of members of the legislative department, namely:
"[T]he Chair of the House Ways and Means Committee; the Chair of the Senate Finance and Taxation-Education Committee; the Chair of the Senate Committee on Economic Expansion and Trade; three members of the House Ways and Means Committee appointed by the Chair of the House Ways and Means Committee; one member of the Senate Finance and Taxation-Education Committee appointed by the Chair of the Senate Finance and Taxation-Education Committee; and one member of the Senate Committee on Economic Expansion and Trade appointed by the Chair of the Senate Committee on Economic Expansion and Trade."
§ 29-2-121, Ala.Code 1975. The Legislative Advisory Committee is authorized under § 29-2-123 to conduct hearings and to gather information in order to determine whether a grant application falls within the applicable guidelines.[5] The Legislative *1016 Advisory Committee is to forward the grant applications to the Executive Commission, along with its recommendations on those applications. Finally, the Executive Commission makes a final ruling on the grant applications forwarded to it from the Legislative Advisory Committee. "The [executive] commission shall have absolute discretion to award or reject any grant." § 29-2-123, Ala.Code 1975. Finally, the Act appropriates to the Executive Commission $12,800,000 from the Education Trust Fund to be used for grants that promote public-education purposes, and $604,633 from the Education Trust Fund to be distributed within those legislative districts "that did not receive the full designated amounts for the fiscal year ending September 30, 2005."
The State filed a complaint in the Montgomery Circuit Court challenging the constitutionality of the Act and moved the court for a preliminary injunction prohibiting the defendants from disbursing any funds from the Education Trust Fund pursuant to the Act. After a hearing, the trial court denied the State's motion in a written order. The State then filed an "Emergency Motion for Injunction Pending Appeal" in this Court, seeking an injunction prohibiting the defendants from disbursing any funds pending the appeal of the trial court's order denying the motion for a preliminary injunction. That case was assigned case no. 1051771.
While the State's emergency motion was pending in this Court, the trial court held a final hearing on the merits of the underlying action. After the hearing, the trial court entered an order in favor of the defendants, upholding the Act against the State's constitutional challenge. The State had argued to the trial court that the Act violated §§ 42 and 43 of the Alabama Constitution of 1901, the separation-of-powers provisions, in that it improperly denied the Governor his role as the chief executive officer under § 113 of the Alabama Constitution.[6] The trial court ruled that the Act does not violate § 113 of the Alabama Constitution. Additionally, the trial court, in response to the defendants' request for relief, issued a writ of mandamus directing the Governor to allot the funds appropriated to the Executive Commission, but the trial court also entered an injunction prohibiting the Executive Commission from disbursing those funds until October 1, 2006.
*1017 This Court heard arguments on September 26, 2006, and issued an order extending beyond October 1, 2006, the trial court's order enjoining the Executive Commission from disbursing the funds appropriated by the Act. Additionally, this Court ordered that the injunction constitutes an encumbrance on the funds appropriated by the Act, so that those funds will not revert to the state treasury at the end of the 2005-2006 fiscal year.[7] Finally, this Court ordered the Joint Fiscal Committee[8] to file a supplemental brief addressing whether the role of the Legislative Advisory Committee violates the separation-of-powers provisions of the Alabama Constitution.

Standard of Review
The State's challenge to the Act is essentially a "`facial challenge,' which is defined as `[a] claim that a statute is unconstitutional on its facethat is, that it always operates unconstitutionally.'" Board of Water & Sewer Comm'rs of Mobile v. Hunter, [Ms. 1050067, July 28, 2006] ___ So.2d ___, ___ (Ala.2006) (quoting Black's Law Dictionary 244 (8th ed.2004)). "Our review of constitutional challenges to legislative enactments is de novo." Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala. 2001). Additionally, acts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala.1999) ("In reviewing the constitutionality of a legislative act, this Court will sustain the act `"unless it is clear beyond reasonable doubt that it is violative of the fundamental law."'" White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944))). We approach the question of the constitutionality of a legislative act "`"with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government."'" Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala.1991), quoting in turn McAdory, 246 Ala. at 9, 18 So.2d at 815).
Moreover, in order to overcome the presumption of constitutionality, the State, the party asserting the unconstitutionality of the Act, bears the burden "to show that [the Act] is not constitutional." Board of Trustees of Employees' Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). See also Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979) ("It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality. . . . ).

Analysis

I.
The State argues first that "the act violates separation of powers because the [Executive Commission] shares authority with the legislature and remains in the legislature's sphere of influence."[9] The *1018 State's argument is based solely on our holding in McInnish, supra, and on that of the Supreme Court of the United States in Bowsher v. Synar, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). Specifically, the State quotes the following language from Bowsher:
"[O]nce Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectlyby passing new legislation."
(State's brief, p. 15 (quoting Opinion of the Justices No. 380, 892 So.2d 332, 337 n. 4 (Ala.2004), quoting in turn Bowsher, 478 U.S. at 733-34, 106 S.Ct. 3181)). However, factually the case before us differs fundamentally from McInnish and from Bowsher, on which McInnish relies.
In McInnish, we reviewed a statutory scheme that provided, first, that the Legislature would appropriate money to the community-services-grant program by legislation. Then, after enactment of the legislation appropriating the funds, the Legislatureacting through the Legislative Oversight Committeedecided which applicants met the statutory criteria for community-services grants. Finally, the Legislative Oversight Committee would order the comptroller to disburse funds to a grant recipient. In McInnish, the Legislative Oversight Committee, a part of the Legislature, was executing the law. Its decision on a grant proposal was final, and the executive branch had no discretion in carrying out the Legislature's decision. McInnish, 925 So.2d at 188 ("Once [the Legislative Oversight Committee] renders its decision, the Committee orders the comptroller, an executive-branch official, to perform the ministerial task of issuing checks to the recipients of the grants in the specified amounts."). The Legislative Oversight Committee's post-legislative-enactment participation in the grant procedure was the exercise of the ultimate executive authority and therefore violated § 43, Ala. Const.1901, the separation-of-powers provision.
The problem with the statutory scheme in McInnish was not that the Legislature was choosing which applicants should receive the community-services grants; the Legislature could have done that by an act of the Legislature because the Legislature's power over appropriations is plenary, as McInnish recognizes. 925 So.2d at 179. The problem addressed in McInnish was that the Legislature, in its appropriation act, had determined not to decide to whom the community-services grants should be awarded, but, instead, had appropriated a lump sum to be distributed in accordance with certain statutory criteria. Such a course of action is perfectly permissible. The Legislature can constitutionally delegate certain decisions to another branch of government "`so long as the delegation carries reasonably clear standards governing the execution and administration.'" Monroe, 762 So.2d at 831 (quoting Folsom v. Wynn, 631 So.2d 890, 894 (Ala.1993)). In McInnish, however, the Legislature delegated that decision to itself. The result of the statutory scheme in McInnish was that the Legislature could pass an appropriation act and then, after that enactment, apply its own criteria and decide more specifically where the appropriation should go. The problem was not that the Legislature made the more specific decision as to where the money would go, but that the Legislature was making that decision post-enactment, in a manner other than by enacting new legislation, *1019 and that post-enactment decision was binding on the executive branch. In so doing, the Legislature crossed the line between legislative and executive responsibility.
Similarly, Bowsher involved a statutory scheme in which Congress made a general decision regarding the federal budget, which was then to be applied more specifically in accordance with statutory guidelines. As was the case in McInnish, Congress attempted to delegate to itself the power to apply and to execute the statutory guidelines it had established by placing in the hands of the comptroller general, who is a legislative employee, the ultimate authority for determining, after the federal budget was enacted, how to apply the law. The Supreme Court of the United States held that "[t]o permit an officer controlled by Congress to execute the laws would be, in essence, to permit a congressional veto." 478 U.S. at 726, 106 S.Ct. 3181. The Supreme Court held in Bowsher that "once Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectlyby passing new legislation." 478 U.S. at 733-34, 106 S.Ct. 3181.
The determinative factor in both McInnish and Bowsher is that the legislation at issue in each case allowed the legislative body to control, post-enactment, the executive branch in the execution of the law. In the case before us, the Act, on its face, does not create legislative control, post-enactment, of the execution of the law. Nothing on the face of the statute permits the Legislative Advisory Committee to control the decision of the Executive Commission. Instead, the Act vests "absolute discretion" in the Executive Commission to approve or to reject any community-services-grant application.
Unlike the legislation in McInnish, the Legislative Advisory Committee, under the Act, plays an advisory role only. Also, the Act does not require the Executive Commission to give any deference to the Legislative Advisory Committee's recommendation or to explain why it has departed from the Legislative Advisory Committee's recommendation. Thus, neither McInnish nor Bowsher is authority upon which we can find the Act unconstitutional under the separation-of-powers doctrine.
We note that Bowsher, upon which the analysis in McInnish relies, addresses the separation-of-powers doctrine as it applies to the federal constitution. Although federal separation-of-powers authority is persuasive in some cases, we note that there is a marked difference between the structure of the Constitution of the United States and that of the Constitution of Alabama. The Constitution of the United States has no express separation-of-powers provision, relying instead on the structure of the document; indeed, The Federalist No. 48, at 332 (J. Madison) (J. Cooke ed., 1961), notes that the separation-of-powers doctrine "does not require that the legislative, executive and judiciary departments should be wholly unconnected with each other." The Constitution of Alabama, on the other hand, expressly requires, first, that
"[t]he powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
Section 42, Ala. Const.1901. And, second, that
"[i]n the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, *1020 the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
Section 43, Ala. Const.1901.
Our Constitution may provide for a stricter application of the separation-of-powers doctrine than is compelled by the federal constitution; however, neither McInnish nor Bowsher provides analysis peculiar to our Constitution on which we can rely, and the State has not set forth any alternative arguments based specifically on the Alabama Constitution.[10] Therefore, the State has failed to meet its burden of proving that the Act calls for an impermissible post-enactment legislative involvement that violates the Alabama Constitution.

II.
The State also argues that the Act is unconstitutional because the Governor does not sit on the Executive Commission and, therefore, has no role in executing the Act. The State says that although § 112, Ala. Const.1901, creates several executive officers, § 113, Ala. Const.1901, puts the Governor "at the top of the chain of command." That section provides: "The supreme executive power of this state shall be vested in a chief magistrate, who shall be styled `The Governor of the State of Alabama.'" Additionally, the State argues, only the Governor is given the duty to "take care that the laws be faithfully executed." § 120, Ala. Const.1901.
The State argues that the word "supreme" as used in § 113 means that the Governor has "a higher rank and power than other members of the Executive Branch." (State's brief, p. 21.) Therefore, the State contends, the Governor must have a "meaningful role" on the Executive Commission. The State, however, was unable to articulate in its brief or at oral argument "how much" control or oversight the Governor must have, or what the nature and character of that control ought properly to be. The State suggests that the closer the executive activity is to a "core executive function," such as the distribution of state funds, the greater the role the Governor should have. The State argues that this Court need not attempt to determine how much control is enough, because "it is surely more than zero" which, the State asserts, is the amount of control the Governor has over the distribution of community-services grants in this case.
We note, however, that the Governor is not totally without control of the Executive Commission. The Executive Commission is composed of executive department officers. If the State is correct that § 113 gives the Governor supreme control of the executive department, then the Governor perforce has a measure of control over the Executive Commission. Additionally, Ala. Const.1901, Art. V, § 121, gives the Governor power to monitor executive department agencies:
"The governor may require information in writing, under oath, from the *1021 officers of the executive department, named in this article, or created by statute, on any subject, relating to the duties of their respective offices, and he may at any time require information in writing, under oath, from all officers and managers of state institutions, upon any subject relating to the condition, management and expenses of their respective offices and institutions. Any such officer or manager who makes a willfully false report or fails without sufficient excuse to make the required report on demand, is guilty of an impeachable offense."
Moreover, Ala.Code 1975, § 6-5-4, provides that the Governor may institute an action to recover public funds that have been lost by neglect or default or that have been wrongfully expended or disbursed or wrongfully used by an officer of the executive department or that have been wrongfully received from him or her. Thus, by its failure to establish that the Governor has absolutely no control and its failure to articulate with any specificity the degree of involvement in excess of the control already available by law that § 113 requires in order for the Act to be valid, the State has failed to meet its burden to prove that the Act is an unconstitutional violation of the separation-of-powers doctrine and to overcome the presumption that the Act is constitutional.

Conclusion
Because we find no basis in the authorities relied upon by the State in support of its claim of a violation of the separation-of-powers doctrine as set forth in § 43 of the Constitution of Alabama, we cannot hold that the Act violates that provision, and because the Constitution and laws of Alabama provide authority for oversight to the Governor and the State is unable to explain what more is required, we cannot hold that the Act violates § 113 of the Constitution of Alabama. Therefore, the judgment of the trial court is affirmed, and the State's "Emergency Motion for Injunction Pending Appeal" is dismissed as moot.
1051771DISMISSED AS MOOT.
1051814AFFIRMED.
NABERS, C.J., and LYONS, HARWOOD, SMITH, BOLIN, and PARKER, JJ., concur.
SEE and STUART, JJ., concur specially.
WOODALL, J., concurs in the result.
SEE, Justice (concurring specially).
I concur fully in the per curiam opinion. I write specially to explain why I believe that there may be a significant difference between the federal separation-of-powers doctrine and the separation-of-powers doctrine embodied in § 43 of the Constitution of Alabama of 1901.
James Madison explained in The Federalist No. 47 and summarized in The Federalist No. 48 that Montesquieu's separation-of-powers doctrine "does not require that the legislative, executive and judiciary departments should be wholly unconnected with each other." The Federalist No. 48, at 332 (J. Cooke ed., 1961). In The Federalist No. 48, he continued:
"It is agreed on all sides, that the powers properly belonging to one of the departments ought not to be directly and compleatly administered by either of the other departments. It is equally evident, that neither of them ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it. After *1022 discriminating therefore in theory, the several classes of power, as they may in their nature be legislative, executive, or judiciary; the next and most difficult task, is to provide some practical security for each against the invasion of the others."
The Federalist No. 48, at 332 (J. Madison) (J. Cooke ed., 1961). Madison notes that the method relied upon in the constitutions of the various states for protecting against the encroachment of one department of government upon the demesne of another has been "to mark with precision the boundaries of these departments in the Constitution of the government, and to trust to these parchment barriers against the encroaching spirit of power." The Federalist No. 48, at 332-33. He states, however, that such "parchment barriers" alone are not enough:
"But the great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means, and personal motives, to resist encroachments of the others. The provision for defence must in this, as in all other cases, be made commensurate to the danger of attack. Ambition must be made to counteract ambition. The interest of the man must be connected with the constitutional rights of the place. It may be a reflection on human nature, that such devices should be necessary to control the abuses of government. But what is government itself but the greatest of all reflections on human nature? If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controuls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: You must first enable the government to controul the governed; and in the next place, oblige it to controul itself."
The Federalist No. 51, at 349 (J. Madison) (J. Cooke ed., 1961).[11] Thus, the structure of the Constitution of the United States is not one in which the legislative, executive, and judicial powers are totally segregated into their respective departments; rather, it is one in which the powers of the three great departments check and balance one another.
Similarly, the Constitution of Alabama organizes the various powers into checks and balances; thus, there will not be a complete isolation of all legislative, executive, and judicial powers distinctly into the three respective departments of the government.[12] The drafters of the Alabama Constitution, however, did not rely only on *1023 these structural measures; they relied also upon "parchment barriers," and it is incumbent on this Court to give effect, when the question is properly before us, to those barriers.
Section 42 of the Constitution of Alabama provides:
"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
Section 43 of the Constitution of Alabama states that no department shall exercise the powers of either of the other departments "except in the instances in this Constitution hereinafter expressly directed or permitted."[13] Thus, it would appear to be incumbent on the department that exercises the power generally entrusted to another department to point to an express constitutional direction or permission to do so.[14] Unlike the Constitution of the United States, from which we may deduce a general, but limited, separation-of-powers doctrine by its structure, the Constitution of Alabama provides expressly for a separation of powers that appears more rigorous than that of the federal constitution.[15] Although the federal courts may look to the practical effect of a minor intrusion of one of the departments of the federal government on the jurisdiction of another, it appears that we are called upon to determine whether the exercise by one department of the government of the powers of another is "expressly directed or permitted."
STUART, J., concurs.
NOTES
[1] The complaint named as defendants the members of the Executive Commission, including Joe Morton in his official capacity as State Superintendent of Education; Lucy Baxley in her official capacity as Lieutenant Governor of Alabama; Kay Ivey in her official capacity as Treasurer of Alabama; and Ron Sparks in his official capacity as Commissioner of Agriculture and Industries of Alabama. Additionally, the complaint named Robert L. Childree in his official capacity as Comptroller of the State of Alabama Department of Finance; and the "Joint Fiscal Committee," which is composed of members of the legislature.
[2] Governor Riley vetoed the Act, but his veto was overridden by the legislature.
[3] A "grant-making agency" is a State agency that has the authority to approve grant proposals and to direct and coordinate the expenditure of grant funds.
[4] It was argued at oral argument that not only legislators, but also any citizen, may apply for a grant; however, our analysis does not turn on that point.
[5] Section 29-2-123 provides:

"It shall be the duty of the committee to review applications and recommend for approval any community services grants made from any funds appropriated to the State Executive Commission on Community Services Grants by the Legislature for the purpose of awarding community services grants. The committee shall evaluate grant proposals based on the relevance of such proposals to the purposes for which such grants shall be made; the extent to which such grant proposal advances the program objectives of the grant-making agency; the ability of the grant recipient to fulfill the objectives of the grant proposal; and the extent to which the grant proposal can benefit the greatest number of citizens, without excluding any geographic regions of the state. All of the above information may be ascertained by appropriate measures, which shall include interviews, audits, public hearings, and recommendations by members of the Legislature. The committee shall act in an advisory role only. All grants recommended for approval or rejection by the committee shall be forwarded to the State Executive Commission on Community Services Grants which shall review each grant for compliance with the criteria listed herein and shall approve or disapprove each grant. The commission shall have absolute discretion to award or reject any grant. The commission shall report to the committee, within 14 days after any meeting, all actions taken. It shall also be the duty of the commission to ensure that, of any appropriations awarded by the commission, a minimum of the equivalent of 0.4% of such appropriations shall be distributed to each House district and 1.2% of such appropriations shall be distributed to each Senate district."
[6] Section 113, Ala. Const.1901, provides:

"The supreme executive power of this state shall be vested in a chief magistrate, who shall be styled `The Governor of the State of Alabama.'"
[7] This order rendered the State's emergency motion moot.
[8] The Joint Fiscal Committee is a "continuing legislative committee" created to "supervise the operation of the Legislative Fiscal Office." Ala.Code 1975, § 29-5-2. By Act No. 91-606, Ala. Acts 1991, the Legislature expressly authorized the Joint Fiscal Committee "to defend against, intervene in or initiate legal proceedings on behalf of" that committee in actions challenging appropriation acts passed by the Legislature.
[9] The record before us does not indicate that the State raised this separation-of-powers argument in the trial court. When the suggestion of a possible remand for attention to this important issue was broached during oral argument, the defendants, in the interest of obtaining an expeditious resolution of these appeals, waived any objection to the review of this issue for the first time on appeal.
[10] Some commentators have suggested that this divergence renders federal authority regarding the separation of powers not pertinent to a discussion of the requirements of a state constitution. See John Devlin, Toward a State Constitutional Analysis of Allocation of Powers: Legislators and Legislative Appointees Performing Administrative Functions, 66 Temp. L.Rev. 1205 (1993); and G. Alan Tarr, Interpreting the Separation of Powers in State Constitutions, 59 N.Y.U. Ann. Surv. Am. L. 329 (2003).
[11] Madison points to reliance on the departments of government to prevent one another from obtaining power beyond their constitutional allocation:

"To what expedient then shall we finally resort for maintaining in practice the necessary partition of power among the several departments, as laid down in the constitution? The only answer that can be given is, that as all these exterior provisions are found to be inadequate, the defect must be supplied, by so contriving the interior structure of the government, as that its several constituent parts may, by their mutual relations, be the means of keeping each other in their proper places."
The Federalist No. 51, at 347-48.
[12] For example, the legislature is a tribunal for impeachment hearings, a judicial function. § 173, Ala. Const.1901. Additionally, the Governor has the power to veto legislative enactments. § 125, Ala. Const.1901. The Constitution of Alabama also vests the Chief Justice of the Supreme Court with the authority to appoint "an administrative director of courts and other needed personnel to assist him with his administrative tasks." Such appointments are an executive function. § 149, Ala. Const.1901.
[13] Section 43, Ala. Const.1901, provides:

"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
[14] It is certainly true that, in order to exercise their constitutional powers and to perform their constitutionally mandated functions, those who serve in one department of the government must undertake tasks that are normally associated with one of the other departments. For example, in order to exercise the power of the judicial branch, the Chief Justice of this Court has the responsibility for allocating funds for staff and equipment. These tasks are executive in nature; however, they are not performed in the exercise of the executive function. Similarly, this Court, in performing its judicial function, promulgates internal rules for its governance; this task is legislative in nature. Administrative law judges in the executive department hear cases, a task that is judicial in nature, but a task that is undertaken in furtherance of the executive function of effecting statutes. Although particular tasks that may be primarily associated with a particular department of government, I believe, may be appropriately performed within any of the three departments, no department, the language of the Constitution suggests, may exercise the constitutionally endowed power of another branch or perform its function unless expressly directed or permitted to do so.
[15] If the Legislative Advisory Committee is exercising the executive power, however minor that exercise might be, then the defendants, it appears, bear the burden of showing that the Alabama Constitution expressly directs or permits the legislature to do so. On appeal, however, the State does not challenge the lower court's order on the basis of the defendants' failure to meet their burden of proof on this issue; therefore, the defendants were not required to demonstrate on appeal that they had done so.