37 So.3d 739 (2009)
NICHOLAS MADALONI and M.A. PUBLISHING SYNDICATE, a corporation
v.
The CITY OF MOBILE et al.
1071500.
Supreme Court of Alabama.
October 23, 2009.
*741 Joseph O. Kulakowski, Mobile, for appellants.
K. Paul Carbo, Jr., of The Atchison Firm, P.C., Mobile, for appellee the City of Mobile.
E.B. Peebles III and Jason C. Botop of Armbrecht Jackson LLP, Mobile, for appellee Downtown Mobile District Management Corporation.
Duncan Crow, asst. counsel, Department of Revenue, for appellee the State of Alabama.
SMITH, Justice.
This action concerns a variety of constitutional and statutory challenges to Act No. 2004-382, Ala. Acts 2004, now codified at §§ 11-54B-40 through -58, Ala.Code 1975, and City of Mobile Ordinance no. 50-39-2005 by plaintiffs Nicholas Madaloni and M.A. Publishing Syndicate, a corporation. Act No. 2004-382 authorized the City of Mobile to enact Ordinance no. 50-39-2005, which created a self-help business-improvement district ("BID") in downtown Mobile. M.A. Publishing Syndicate is an Alabama corporation located in downtown Mobile within the BID, and Madaloni is the sole owner of M.A. Publishing Syndicate.
Madaloni and M.A. Publishing Syndicate ("the plaintiffs") now appeal from a summary judgment entered in favor of the defendants, the Downtown Mobile District Management Corporation, the City of Mobile, and the State of Alabama (collectively "the defendants"). We affirm.

Facts and Procedural History
By definition "[A]ct [No. 2004-382] is intended as the exclusive procedure by which a Class 2 municipality may create and maintain a self-help business improvement district." Act No. 2004-382, § 3. A "self-help business improvement district" is defined in Act No. 2004-382 as "[a]n area in which a special assessment may be levied on the owners of real property located within the geographical area of the district for the purposes of providing supplemental services within the district and promoting the economic and general welfare of the district."[1] Act No. 2004-382, *742 § 2. Act No. 2004-382 was patterned after Act No. 94-677, Ala. Acts 1975, codified at §§ 11-54B-1 through -39, Ala.Code 1975, which establishes the exclusive procedure for Class 1 municipalities to adopt ordinances to create BIDs.
Before the introduction of Senate Bill 146, which became Act No. 2004-382, in the Alabama Legislature, a synopsis of the proposed act was published in the Mobile Press-Register once a week for four consecutive weeks in January 2004.[2] Senate Bill 146 ultimately passed both houses of the legislature, and it was approved and signed by the governor on May 3, 2004.
After Act No. 2004-382 became effective, individuals who owned property located in downtown Mobile requested that the city council for the City of Mobile adopt an ordinance to create a BID. Pursuant to the procedures set out in Act No. 2004-382, the individuals presented the city council with a "Mobile Downtown Business Improvement Plan," which states that they desired the creation of a BID in downtown Mobile to improve safety, maintenance, parking, and retail/office recruitment and retention in the area. The city council subsequently held a hearing on a proposed ordinance to create the BID in downtown Mobile. One week after the hearing, on May 10, 2005, the city council enacted Ordinance no. 50-39-2005. The ordinance designated the geographic area of the BID, imposed a special assessment upon owners of real property within the district to finance the costs of the supplemental services associated with a BID, and designated the Downtown Mobile District Management Corporation as the entity that would provide supplemental services within the district.
The plaintiffs brought this action seeking a judgment declaring Act No. 2004-382 and Ordinance no. 50-39-2005 void. Specifically, the plaintiffs asserted that the Act and the Ordinance violate Art. IV, §§ 45, 89, 104, 105, and 106, and Art. XII, § 223, of the Alabama Constitution of 1901 (Off.Recomp.). The plaintiffs further asserted that Act No. 2004-382 and Ordinance no. 50-39-2005 conflict with §§ 39-2-2 and 41-16-50, Ala.Code 1975, and various sections of the Municipal Public Improvements Act, § 11-48-1 et seq., Ala. Code 1975, and the Alabama Improvement District Act, § 11-99A-1 et seq., Ala.Code 1975.
In the trial court, the parties filed cross-motions for a summary judgment. The trial court granted each of the defendants' summary-judgment motions without an opinion. The plaintiffs then moved "pursuant to Rule 54(b)[, Ala. R. Civ. P.,] for the court to rule on the plaintiffs' motion for summary judgment and to enter a final order in this cause." Thereafter, the trial court denied the plaintiffs' summary-judgment motion in an order that stated "all issues in this case have been adjudicated." The plaintiffs appeal.

Standard of Review
"`This court reviews de novo a trial court's interpretation of a statute, because only a question of law is presented.' Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review."
Continental Nat'l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005). Likewise,

*743 "`[o]ur review of constitutional challenges to legislative enactments is de novo.' Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001). Additionally, acts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala.1999) (`In reviewing the constitutionality of a legislative act, this Court will sustain the act "`unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'" White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)).'). We approach the question of the constitutionality of a legislative act `"`with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.'"' Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala.1991), quoting in turn McAdory, 246 Ala. at 9, 18 So.2d at 815).
"Moreover, in order to overcome the presumption of constitutionality, . . . the party asserting the unconstitutionality of the Act . . . bears the burden `to show that [the Act] is not constitutional.' Board of Trustees of Employees' Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). See also Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979)(`It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality. . . .')."
State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006).

Discussion
A principal issue in this case is whether Act No. 2004-382 is a "general law" or a "local law." The distinction between a general law and a local law is significant because the Alabama Constitution places certain limitations on the power of the legislature to enact local laws. See, e.g., Art. IV, §§ 104, 105, and 106, Ala. Const. 1901 (Off.Recomp.).
Article IV, § 110, of the Alabama Constitution of 1901 (Off.Recomp.), as amended by Amendments No. 375 and No. 397, defines the terms "general law" and "local law" as follows:
"A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law, provided that the legislature may also enact and change from time to time a general schedule of not more than eight classes of municipalities based on population according to any designated federal decennial census, and general laws for any purpose may thereafter be enacted for any such class. Any law heretofore enacted which complies with the provisions of this section shall be considered a general law.
"No general law which at the time of its enactment applies to only one municipality of the state shall be enacted, unless notice of the intention to apply therefor shall have been given and shown as provided in Section 106 of this Constitution for special, private or local laws; provided, that such notice shall not be deemed to constitute such law a local law.
"A special or private law is one which applies to an individual, association or *744 corporation. A local law is a law which is not a general law or a special or private law."
Alabama law is well established that "when a dispute arises over whether a law is local or is general in nature, a court is obligated, when possible, to read the law as a general one." Densmore v. Jefferson County, 813 So.2d 844, 849 (Ala.2001) (citing Norton v. Mobile County, 562 So.2d 503 (Ala.1990)); see also State ex rel. Conrad v. Board of Revenue & Road Comm'rs, 231 Ala. 18, 21, 163 So. 345, 348 (1935) ("We are firmly committed to the proposition that a statute should not be held to be local, where, by its terms, given a reasonable and fair construction, it may be interpreted as a general law, and its constitutionality thereby sustained."). However, this Court has also warned that "an act that was clearly intended to apply to a single county must be construed as a local act." Norton, 562 So.2d at 505 (citing Opinion of the Justices No. 197, 284 Ala. 626, 227 So.2d 396 (1969)).
The plain language of Act No. 2004-382 does not apply to a specific municipality; rather, the Act sets out the exclusive procedure by which "any Class 2 municipality" can adopt an ordinance to create a BID. Accordingly, Act No. 2004-382 is a general law. The plaintiffs, in a reply brief, concede as much. See plaintiffs' reply brief to the State's brief, p. 1 ("Act No. 2004-382 was a general law. . . .").

1. Article IV, §§ 104, 105, and 106, Alabama Constitution of 1901
As a general law, Act No. 2004-382 does not violate Art. IV, §§ 104 and 105, Ala. Const.1901, because those sections are applicable only to special, private, or local laws.[3]
The plaintiffs argue, however, that Act No. 2004-382 is subject to the notice requirements for local laws set out in Art. IV, § 106.[4] Article IV, § 110, Ala. Const. 1901, provides that no "general law which at the time of its enactment applies to only one municipality of the state" shall be enacted unless notice of the law was given as required by Art. IV, § 106, of the Alabama Constitution. See also § 11-40-13, Ala. Code 1975 (same). The Alabama Constitution is clear, however, that the requirement for notice of a general law under §106 "shall not be deemed to constitute such law a local law." Art. IV, § 110, Ala. Const.1901.
Here, the plaintiffs contend that Act No. 2004-382 applies to only one municipality because, they argue, the City of Mobile was the sole Class 2 municipality within the State of Alabama when Act No. 2004-382 *745 was enacted. Section 11-40-12(a), Ala.Code 1975, sets out the following classifications for municipalities:
"(a) There are hereby established eight classes of municipalities based on the population as certified by the 1970 federal decennial census, as authorized by Amendment No. 375 [now § 110], Constitution of Alabama of 1901, as follows:
". . . .
"Class 2: All cities with a population of not less than 175,000 and not more than 299,999 inhabitants. . . ."
The determination of whether the City of Mobile was the only Class 2 municipality when Act No. 2004-382 was enacted hinges on whether the City's population is based upon the 1970 federal decennial census or the most recent federal decennial census. If the population is based on the 1970 federal decennial census, the City of Mobile is the only municipality with a population that falls within the Class 2 designation; if it is based on the 2000 federal decennial census, the City of Mobile, the City of Birmingham, and the City of Montgomery all fall within the Class 2 designation.
The plaintiffs contend that § 11-40-12(a) provides that the classifications must be based upon the population as tabulated by the 1970 federal decennial census and that, therefore, municipalities cannot grow into or shrink out of the classifications.[5] In this case, a determination of whether § 11-40-12(a) is tied to the 1970 federal decennial census or to the most recent federal decennial census and, therefore, whether Act No. 2004-382 is subject to Art. IV, § 106, Ala. Const. 1901, is unnecessary. If § 11-40-12(a) is tied to the most recent federal decennial census, Act No. 2004-382 is a general law that applied to more than one municipality when it was enacted. Consequently, Act No. 2004-382 would not be subject to the notice requirements of § 106. Alternatively, if § 11-40-12(a) is tied to the 1970 federal decennial census, the plaintiffs have not demonstrated that Act No. 2004-382 violates § 106.
Section 106 requires that notice of a special, private, or local law "be published at least once a week for four consecutive weeks in some newspaper published" in the county where the "thing to be affected" is situated. Art. IV, § 106, Ala. Const. 1901. The "notice shall state the substance of the proposed law." Art. IV, § 106, Ala. Const.1901. This Court has recognized the following attributes of the "substance" of a law for purposes of public notice:
"`(1) The "substance" means an intelligible abstract or synopsis of [a bill's] material and substantial elements; (2) *746 the substance may be sufficiently stated without stating the details subsidiary to the stated elements; (3) the legislature may shape the details of proposed local legislation by amending bills when presented for consideration and passage; and (4) the substance of the proposed act as advertised cannot be materially changed or contradicted.'"
Phalen v. Birmingham Racing Comm'n, 481 So.2d 1108, 1119 (Ala.1985) (quoting Birmingham-Jefferson Civic Ctr. Auth. v. Hoadley, 414 So.2d 895, 899 (Ala.1982)). Further, this Court has emphasized that "[t]he public notice need not state all the details of the bill, and need not set forth the bill in its entirety." Phalen, 481 So.2d at 1119. The "notice need only state an intelligible abstract or synopsis of the bill's material and substantive elements, leaving the legislature free to shape and improve the details of the proposed bill during the legislative process." Id.
This Court has noted that details in a public notice may be more burdensome than beneficial by observing that "a detailed advertisement will be more strictly scrutinized than a general advertisement. Logically, the more details included in the advertisement the more likely it is that material variances will be found upon comparison of the advertised bill with the enacted law." Deputy Sheriffs Law Enforcement Ass'n of Mobile County v. Mobile County, 590 So.2d 239, 242 n. 3 (Ala.1991) (citations omitted). Further,
"[i]f the details are not published but only the general nature of its substantive features, the public is put upon inquiry as to such details, and bound by a failure to inform itself, continuing through such changes and amendments as may stay within such substantive features as published. But if the publication gives details, the public need not pursue the inquiry further in respect to such details; for the information is complete, and it has the constitutional right to assume that such details will not be materially changed throughout the journey of the bill to its final passage and approval."
State ex rel. Wilkinson v. Allen, 219 Ala. 590, 593, 123 So. 36, 38 (1929).
The published legal notice of Act No. 2004-382 stated as follows:
"STATE OF ALABAMA COUNTY OF MOBILE
"Notice is hereby given that a bill as described below will be introduced by SENATOR VIVIAN DAVIS FIGURES in the upcoming 2004 Regular Session, or any special session in 2004, of the Legislature of Alabama and application for its passage and enactment will be made:
"A BILL TO BE ENTITLED AN ACT
"SYNOPSIS: Relating to Class 2 Municipalities; to provide procedures for any Class 2 municipality to establish one or more self-help business improvement districts to provide supplemental services; to provide for the management, operation, powers, and duties of the districts, including the creation of nonprofit corporations to manage the districts; to provide certain required provisions in the articles of incorporation of district management corporations; to provide for dissolution of a district and withdrawal of a nonprofit corporation's designation as a district management corporation; and to provide that district management corporations shall have no power of eminent domain."
The plaintiffs argue that this notice was "so lacking in detail as not to be an `intelligible abstract or synopsis of the bill's material *747 elements.'" Deputy Sheriffs Law Enforcement Ass'n of Mobile County, 590 So.2d at 242 (quoting Phalen, 481 So.2d at 1119). Stated another way, the plaintiffs argue that the public notice materially varied from Act No. 2004-382 itself because the notice failed to reference specific provisions of the Act, such as the provision that an ordinance adopted by a Class 2 municipality to create a BID shall provide that all costs of the supplemental services provided within the BID shall be financed through the levy of a special assessment upon property owners in the BID.
As we noted in the standard of review, "acts of the legislature are presumed constitutional." Morton, 955 So.2d at 1017. Alabama law is well established that "we are obliged to construe statutes so as to avoid conflicts with constitutional provisions if possible." City of Homewood v. Bharat, LLC, 931 So.2d 697, 701 (Ala. 2005) (citing James v. Todd, 267 Ala. 495, 505, 103 So.2d 19, 27 (1957)). See also Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944) ("[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government."). Moreover, "[t]he clear trend of our modern cases seems to be to uphold legislation, rather than strike it down because of a finding that there was a material variance" between the enacted law and the advertised bill. Deputy Sheriffs Law Enforcement Ass'n of Mobile County, 590 So.2d at 242.
Applying these standards, we conclude that the public notice of Act No. 2004-382 sufficiently stated the substance of that Act and, therefore, met the notice requirements of § 106. The substance of Act No. 2004-382 is the authorization for Class 2 municipalities to create BIDs, if a representative group of owners of real property within a geographic area so request, and the establishment of the exclusive procedures Class 2 municipalities must follow to create such districts. See Act No. 2004-382, § 3. The provisions of Act No. 2004-382 that detail the procedures a municipality must follow to create a BID are not required to be included in the public notice because such provisions are subsidiary to the substance of the Act. We emphasize that Act No. 2004-382 itself does not levy a special assessment upon owners of real property within the BID. Rather, Act No. 2004-382 provides that owners of real property who desire to create a BID may submit a BID plan to the governing body of a Class 2 municipality and further provides that the plan shall include a "description of the method which will be used to determine the amount of the special assessment to be levied." § 5. Act No. 2004-382 further details that after a municipality has held a public hearing on a BID plan, the municipality may then adopt an ordinance creating a BID and that such an ordinance shall provide that all costs of the supplemental services provided in the BID shall be financed through the levy by the municipality of a special assessment.
In short, we conclude that the substance of Act No. 2004-382 was sufficiently articulated in the public notice without including specific details of the procedures a Class 2 municipality must follow to create, fund, and operate a BID. As stated above, "[t]he public notice need not state all the details of the bill, and need not set forth the bill in its entirety." Phalen, 481 So.2d at 1119. The plaintiffs have not met their burden of demonstrating that the passage of Act No. 2004-382 violated Art. IV, § 106, Ala. *748 Const.1901.[6]

2. Article IV, § 45, Alabama Constitution of 1901
The plaintiffs next argue that Act No. 2004-382 violates the single-subject requirement of Art. IV, § 45, of the Alabama Constitution of 1901. Section 45 requires that "[e]ach law shall contain but one subject, which shall clearly be expressed in its title. . . ." This Court has stated that "[§ ]45 requires only that the title not be `so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment.'" Smith v. Industrial Dev. Bd. of Andalusia, 455 So.2d 839, 841 (Ala.1984) (quoting Alabama Educ. Ass'n v. Grayson, 382 So.2d 501, 505 (Ala.1980)). This Court has further advised:
"`Section 45 . . . should be liberally and reasonably construed to permit the legislature to operate without undue strictures on its prerogatives. It should not be exactingly enforced to cripple legislation. Its purpose is to prevent fraud and surprise on the legislature by prohibiting measures in a bill not reflected in its title. This purpose is served so long as the subject matter included in the bill is germane to, cognate with, or complementary to the idea expressed in the title.'"
Board of Water & Sewer Comm'rs of City of Mobile v. Hunter, 956 So.2d 403, 415 (Ala.2006) (quoting Opinion of the Justices No. 307, 449 So.2d 237, 238 (Ala.1984) (citations omitted)).
The title of Act No. 2004-382 provides as follows:
"Relating to Class 2 municipalities; to provide procedures for any Class 2 municipality to establish one or more self-help business improvement districts to provide supplemental services; to provide for the management, operation, powers, and duties of the districts, including the creation of nonprofit corporations to manage the districts; to provide certain required provisions in the articles of incorporation of district management corporations; to provide for dissolution of a district and withdrawal of a nonprofit corporation's designation as a district management corporation; and to provide that district management corporations shall have no power of eminent domain."
The plaintiffs contend that the title impermissibly failed to provide notice of the possibility of special assessments against property owners to fund the BID and, generally, that the title is so unclear that an average person or legislator could not understand the effect of Act No. 2004-382.
Again applying this Court's standard of review for constitutional challenges as well as its liberal construction of the requirements of § 45, we conclude that the plaintiffs have not demonstrated that Act No. 2004-382 violates the single-subject requirement of § 45. Act No. 2004-382 has but one broad subjectestablishing the exclusive procedures for Class 2 municipalities to adopt ordinances to create and maintain BIDsand the title reflects this subject. Each of the 21 sections of Act No. 2004-382 relate to this subject, and it is unreasonable to require that the title detail each section.[7]

*749 3. The Municipal Public Improvements Act, Ala.Code 1975, § 11-48-1 et seq., and the Alabama Improvement District Act, Ala.Code 1975, § 11-99A-1 et seq.

The plaintiffs next argue that Act No. 2004-382 and Ordinance no. 50-39-2005 are unconstitutional because, they say, they conflict with various sections of the Municipal Public Improvements Act, Ala. Code 1975, § 11-48-1 et seq., and the Alabama Improvement District Act, Ala.Code 1975, § 11-99A-1 et seq. This argument is based on two rationales. First, the plaintiffs contend that Act No. 2004-382 and Ordinance no. 50-39-2005 should be treated as local laws that are subsumed by general acts such as the Municipal Public Improvements Act and the Alabama Improvement District Act. See Art. IV, § 105, Ala. Const. 1901 ("No . . . local law . . . shall be enacted in any case which is provided for by a general law. . . ."). See also § 11-45-1, Ala.Code 1975.[8] This argument fails because, as discussed above, Act No. 2004-382 is a general law regardless of whether it applied only to the City of Mobile when it was enacted.
Second, the plaintiffs contend that Act No. 2004-382 and Ordinance no. 50-39-2005 conflict with the Municipal Public Improvements Act and the Alabama Improvement District Act, and, therefore, violate Art. IV, § 89, Ala. Const.1901. Section 89 provides that "[t]he legislature shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this state." This argument also fails because Act No. 2004-382 and Ordinance no. 50-39-2005 are separate and distinct from the Municipal Public Improvements Act and the Alabama Improvement District Act. Act No. 2004-382 provides the "exclusive procedure by which a Class 2 municipality may create and maintain a self-help business improvement district" to provide a range of supplemental services focused on promoting economic growth in BIDs. § 3. However, the Alabama Improvement District Act provides procedures by which any municipality or county may create improvement districts for the purpose of benefiting the general public, and the Municipal Public Improvements Act concerns only municipal improvements to streets, sewers, water and gas mains, and service connections.
Moreover, the plaintiffs have not cited any authority in support of the argument that the Municipal Public Improvements Act and the Alabama Improvement District Act are controlling over other general laws such as Act No. 2004-382. It is the appellant's burden to refer this Court to legal authority that supports its argument. Rule 28(a)(10), Ala. R.App. P., requires that the argument in an appellant's brief include "citations to the cases, statutes, [and] other authorities. . . relied on." Consistent with Rule 28, "[w]e have stated that it is not the function of this court to do a party's legal research." Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992) (citing Henderson v. Alabama A & M Univ., 483 So.2d 392, 392 (Ala.1986)). "When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither *750 this Court's duty nor its function to perform an appellant's legal research." City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998).
Because the plaintiffs have cited no legal authority that demonstrates that Act No. 2004-382 and Ordinance no. 50-39-2005 impermissibly conflict with the Municipal Public Improvements Act and the Alabama Improvement District Act, we will not reverse the trial court's judgment as to these issues.

4. Competitive-Bid Laws
The plaintiffs further argue that the "base-line-services agreement" entered into by the defendants the City of Mobile and the Downtown Mobile District Management Corporation is void because, they argue, it violates competitive-bid provisions set out in §§ 39-2-2, 41-16-50, and 11-99A-12, Ala.Code 1975.[9] The term "base-line-services agreement" is defined in Ordinance no. 50-39-2005 as "the contract between the City and the [Downtown Mobile District Management] Corporation setting out the services that will be provided in the [BID] by the City and by the Corporation." Section 7 of Act No. 2004-382 authorizes the execution of such an agreement between any Class 2 municipality and the district-management corporation, which is defined in Act No. 2004-382 as "[a]n entity created by incorporation under the Alabama Nonprofit Corporation Act, Chapter 3A, of Title 10, Code of Alabama 1975, and designated by ordinance by the incorporated municipality to manage a self-help business improvement district." § 2(1).
*751 The plaintiffs contend that the base-line-services agreement violates these statutes because it "was not put out for competitive bid." Plaintiffs' brief, pp. 65-66. The plaintiffs make the bare-bones contention that §§ 41-16-50, 11-99A-12, and 39-2-2, Ala.Code 1975, apply to Act No. 2004-382 and Ordinance no. 50-39-2005 because the Downtown Mobile District Management Corporation receives funds from the State of Alabama, Mobile County, and the City of Mobile. The plaintiffs provide no support for this contention, and Act No. 2004-382 expressly provides that "all costs of the supplemental services provided in a self-help business improvement district shall be financed through the levy by the municipality of a special assessment on the owners of the nonexempt real property located within the geographical area of the district." § 8 (emphasis added).
The plaintiffs have not presented any authority or argument, as required by Rule 28, Ala. R.App. P., as to why the competitive-bid provisions set out at Ala. Code 1975, §§ 41-16-50, 11-99A-12, and 39-2-2, should trump the "exclusive procedure" for the creation and maintenance of BIDs set out in Act No. 2004-382. We again emphasize that "it is not the function of this court to do a party's legal research" and "we cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument." Spradlin, 601 So.2d at 78. Accordingly, the plaintiffs have not demonstrated that the base-line-services agreement violates Ala.Code 1975, § 39-2-2, § 41-16-50, or § 11-99A-12.

5. Article IV, § 223, Alabama Constitution of 1901
Lastly, the plaintiffs argue that Ordinance no. 50-39-2005 violates Article XII, § 223, of the Alabama Constitution of 1901. Section 223 provides as follows:
"No city, town, or other municipality shall make any assessment for the cost of sidewalks or street paving, or for the cost of the construction of any sewers against property abutting on such street or sidewalk so paved, or drained by such sewers, in excess of the increased value of such property by reason of the special benefits derived from such improvements."
The plaintiffs argue that Ordinance no. 50-39-2005 is in "fatal conflict with . . . § 223 in that the ordinance provides for a perpetual, permanent annual municipal assessment without any correlation to any final assessment, or correlation to any increase of property value attributable to the municipal assessment." Plaintiffs' brief, p. 68. However, the plaintiffs have again failed to cite any authority showing that § 223 is applicable to Ordinance no. 50-39-2005, as required by Rule 28, Ala. R.App. P.
By its express terms, § 223 relates to assessments for the costs of sidewalks, street paving, and sewers, while Ordinance no. 50-39-2005 "impose[s] a special assessment upon the owners of the real property located within the [BID] to finance the cost of the supplemental services that will be provided by the District Management Corporation in the [BID]." The ordinance broadly defines the term "supplemental services" as "[t]he programs and services to be provided and maintained by the Corporation within the [BID]." Although those services may include maintenance of sidewalks, streets, and sewers, the special assessment also funds safety-prevention programs, litter collection, and the recruitment and retention of businesses in the district. Again applying our standard of review of a constitutional challenge to a legislative act, we conclude that the plaintiffs have not met their burden of demonstrating *752 that Ordinance no. 50-39-2005 violates Article XII, § 223, Ala. Const.1901.

Conclusion
For the foregoing reasons, the summary judgment in favor of the Downtown Mobile District Management Corporation, the City of Mobile, and the State of Alabama is affirmed.
AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, and SHAW, JJ., concur.
PARKER and MURDOCK, JJ., dissent.
MURDOCK, Justice (dissenting).
As the main opinion notes, Art. IV, § 106, Ala. Const.1901, requires that any notice to which it is applicable "shall state the substance of the proposed law." 37 So.3d at 745. As the main opinion further notes, this Court has recognized that a statement of the "substance" of a proposed law includes "`"an intelligible abstract or synopsis of [a bill's] material and substantial elements. . . ."'" 37 So.3d at 745 (quoting Phalen v. Birmingham Racing Comm'n, 481 So.2d 1108, 1119 (Ala.1985), quoting in turn Birmingham-Jefferson Civic Ctr. Auth. v. Hoadley, 414 So.2d 895, 899 (Ala.1982)). Because I believe that the provisions of Act No. 2004-382 authorizing the City of Mobile to levy special assessments upon property owners to fund the self-help business improvement district at issue was a material element of that Act, and because the advertisement of Act No. 2004-382 contained no reference to that element, I respectfully dissent.
PARKER, J., concurs.
NOTES
[1] Act No. 2004-382 provides that "[a] Class 2 municipality, by ordinance, may provide for the creation and maintenance of one or more self-help business improvement districts pursuant to this article." § 3 (emphasis added). If a Class 2 municipality adopts an ordinance to create a BID, that "ordinance . . . shall provide that all costs of the supplemental services provided in a self-help business improvement district shall be financed through the levy by the municipality of a special assessment on the owners of the nonexempt real property located within the geographical area of the district. . . ." Act No. 2004-382, § 8 (emphasis added).
[2] The text of the notice is provided infra.
[3] Section 104 provides that "[t]he legislature shall not pass a special, private, or local law in any of the following cases. . . ." Section 105 provides as follows:

"No special, private, or local law . . . shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; . . . nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law."
[4] Section 106 provides as follows:

"No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution . . . unless notice of the intention to apply therefore shall have been published . . . in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties. . . . The courts shall pronounce void every special, private, or local law which the [legislative] journals do not affirmatively show was passed in accordance with the provisions of this section."
[5] This Court has repeatedly stated that § 11-40-12(a) provides that the classifications are based upon populations as certified by the 1970 federal decennial census. See, e.g., Phase II, LLC v. City of Huntsville, 952 So.2d 1115, 1118 (Ala.2006) ("Class 3 municipalities are those having populations of `not less than 100,000 and not more than 174,999 inhabitants' based on the 1970 federal decennial census." (quoting § 11-40-12(a), Ala.Code 1975)); Opinion of the Justices No. 361, 693 So.2d 21, 22 (Ala. 1997) (same); Phalen v. Birmingham Racing Comm'n, 481 So.2d 1108, 1114 (Ala. 1985) ("Section 11-40-12 defines Class I municipalities . . . based on the population as certified by the 1970 federal decennial census."); Siegelman v. Folmar, 432 So.2d 1246, 1249 (Ala.1983) ("Section 11-40-12, Code 1975, states that class 3 municipalities are all cities with populations of not less than 100,000 and not more than 174,999 inhabitants according to the 1970 federal decennial census."). Nonetheless, in Lifestar Response of Alabama, Inc. v. Lemuel, 908 So.2d 207, 219 (Ala.2004), this Court took judicial notice of the 2000 federal decennial census when determining the population of a municipality for the purposes of municipal classification under § 11-40-12(a).
[6] We pretermit any discussion of whether the public notice of Ordinance no. 50-39-2005 violated § 106 because the plaintiffs did not assert such a claim in the trial court.
[7] Because we conclude that Act No. 2004-382 does not violate § 45, we pretermit any discussion of whether the codification of Act No. 2004-382 cured any legislative infirmities. See, e.g., Densmore, 813 So.2d at 850.
[8] "Section 11-45-1, Ala.Code 1975, provides as follows:

"Municipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law and to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and may enforce obedience to such ordinances."
[9] Section 39-2-2(a), Ala.Code 1975, provides, in pertinent part: "Before entering into any contract for a public works involving an amount in excess of fifty thousand dollars ($50,000), the awarding authority shall advertise for sealed bids." Section 41-16-50, Ala. Code 1975, provides, in pertinent part:

"[A]ll expenditure of funds of whatever nature for labor, services, work, or for the purchase of materials, equipment, supplies, or other personal property involving fifteen thousand dollars ($15,000) or more, and the lease of materials, equipment, supplies, or other personal property where the lessee is, or becomes legally and contractually, bound under the terms of the lease, to pay a total amount of fifteen thousand dollars ($15,000) or more, made by or on behalf of any state trade school, state junior college, state college, or university under the supervision and control of the State Board of Education, the city and county boards of education, the district boards of education of independent school districts, the county commissions, the governing bodies of the municipalities of the state, and the governing boards of instrumentalities of counties and municipalities, including waterworks boards, sewer boards, gas boards, and other like utility boards and commissions, except as hereinafter provided, shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder."
Section 11-99A-12, Ala.Code 1975, provides, in pertinent part:
"Upon the making of the preliminary assessment, the board shall prepare contracts and bid specifications, and shall bid or otherwise contract for the acquisition, construction, or installation of all the improvements as specified in the petition. In general, all contracts shall be bid in accordance with applicable state law. However, if an improvement or a portion of an improvement is to be paid for exclusively with funds provided through assessments under this chapter or by the owners or on behalf of the owners, and not from any revenues, taxes, or funds of the appointing government, the contracting for the acquisition, construction, or installation of the improvement or portion thereof shall be exempt from all laws relating to the advertising and award of construction contracts and purchase contracts, including, without limitation, Title 39 and Article 3 of Chapter 16 of Title 41, and shall be performed in the sole discretion of the board. All contracts and bids shall be contingent upon the issuance of a final assessment by the appointing government as hereinafter provided."